IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03077-RM-KLM
(Consolidated with Civil Action No. 13-cv-01217-RM-KLM)

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation,

    Plaintiff,

v.

PITKIN COUNTY TITLE, INC.,

    Defendant.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Motion For Reconsideration of Order and Recommendation Granting Defendant/Third-Party Plaintiff Fidelity National Title Insurance Company's Motion to Stay Proceedings** [#114] (the "Motion"). Defendant filed a Response [#123] to the Motion and Plaintiff Fidelity National Title Insurance Company ("Fidelity") filed a Reply [#124] in further support of the Motion. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion has been referred to the undersigned for disposition [#115]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#114] is **DENIED**.

## I. Background

### A. Procedural Background

This case was initially brought by insureds, Preston and Betty Henn (the "Henns") against Fidelity. *See generally Compl.* [#1]. The Henns brought claims against Fidelity for its alleged breach of their title policy. *See generally id.* On May 12, 2013, Fidelity, which at that time was the only Defendant, filed a third-party complaint against Defendant, alleging that Defendant, among other things, acted negligently when it deleted certain insurance policy exceptions from the title policy that was issued to the Henns. *See generally Defendant/Third-Party Plaintiff Fidelity National Title Insurance Company's Corrected Third-Party Complaint and Jury Demand Against Third-Party Defendant Pitkin County Title, Inc.* [#34] (the "Third-Party Complaint"). On November 15, 2013, Fidelity filed its Motion to Stay Proceedings [#68] (the "Motion to Stay"), which stated that it was opposed by the Henns and that Defendant "does not oppose the Motion." *Motion to Stay* [#68] at 2. On February 21, 2014, the Court received an email from Fidelity's counsel informing the Court that Fidelity and the Henns settled the claims between them. *Minute Order* [#93] at 1. On March 19, 2014, the Court set a deadline for Fidelity and the Henns to file dismissal papers regarding those claims. *Id.* On April 17, 2014, Defendant filed its Motion to Join in Fidelity National Title Insurance Company's Motion to Stay Proceedings [Doc. No. 68] [#108] (the "Joinder Motion") stating that it filed "this Motion to Join to make clear that [Defendant] joins with Fidelity in requesting the relief set forth in the Motion to Stay [Doc. No. 68], supports the motion, and agrees that the Court should grant the relief sought therein." *Joinder Motion* [#108] at 2. The next day, The Henns and Fidelity filed their Joint Motion to Dismiss Complaint [#110] (the "Motion to Dismiss"), which, if granted,

would dispose of all claims between them. That same day, the Court entered its Order and Recommendation of United States Magistrate Judge [#112] (the "Challenged Order"). The instant Motion asks the Court to reconsider the Challenged Order. In the Challenged Order, the Court explained:

> On April 18, 2014, Plaintiffs and Defendant/Third-Party Plaintiff filed their Joint Motion to Dismiss Complaint [#110], which states that all claims Plaintiffs assert against Defendant/Third-Party Plaintiff have been resolved. Accordingly, Plaintiffs' opposition to the Motion is no longer relevant to resolution of the Motion. Third-Party Defendant does not oppose the Motion and recently filed a joinder motion. *See generally Defendant/Third-Party Plaintiff Fidelity National Title Insurance Company's Status Report Re: Motion to Stay Proceedings* [#76]; *Joinder Motion* [#108]. Accordingly, the Court treats the Motion as unopposed.
>
> In the Motion, Defendant/Third-Party Plaintiff requests a stay of all proceedings in this case while a related state-court case, *Westpac Aspen Investments LLC v. Preston B. Henn, et al.*, (the "State Court Action") proceeds. *Motion* [#68] at 4. Defendant/Third-Party Plaintiff explains that the State Court Action involves a dispute about an easement and that the instant action involves claims relating to a title insurance policy relating to the real property at issue in the State Court Action. *Id.* at 2. As a result, Defendant/Third-Party Plaintiff argues that "[i]f this case proceeds to trial prior to the resolution of the [State Court Action], there is a significant risk that there will be inconsistent verdicts regarding the existence of an easement, Plaintiffs' entitlement to damages, or the amount of Plaintiffs' damages, if any." *Id.* at 4

*Challenged Order* [#112] at 1-2. The Court then applied the factors outlined in *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (citing *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987) (unreported decision)), and concluded that the *String Cheese Incident* factors weighed in favor of a stay, but recommended that the case be administratively closed pursuant to D.C.COLO.LCivR 41.2 for administrative reasons. *Challenged Order* [#112] at 3-4. On April 21, 2014, the Court granted the Motion to Dismiss. *Order* [#113] at 2. Later, because

3

the Henns were no longer parties to this action, the Court ordered that the caption be modified to its present state, which reflects the relationship of the remaining parties in the Third-Party Complaint. *Order* [#120] at 1.

**B.     The Motion**

In the Motion, Fidelity asks the Court to reconsider the Challenged Order and asks the Court to deny as moot the Motion to Stay [#68]. *Motion* [#114] at 3. It argues that the Motion to Stay was "based on the uncertainty and prejudice that could result to Fidelity from inconsistent verdicts if this case were tried prior to resolution of" the State Court Action. *Id.* at 4. Fidelity argues that its claims against Defendant "were undetermined, based on the uncertainty of the outcome of the" State Court Action. *Id.* Fidelity maintains that it intended "to move to withdraw" the Motion to Stay "following the granting of the" Motion to Dismiss. *Id.* at 5. Fidelity further argues that the Motion to Stay is moot because the breach of contract claim it asserts against Defendant in the Third-Party Complaint "is based solely on conduct by [Defendant] predating the" State Court Action. *Id.* Fidelity explains its claims as follows:

> [Defendant's] liability in this case stems from its 2004 breach of the Issuing Agency Agreement between it and Fidelity. Specifically, the Issuing Agency Agreement prohibited [Defendant] from altering any title form from Fidelity without prior written authorization from Fidelity's corporate underwriting department. On July 29, 2004, [Defendant] issued a title policy to [the Henns] in which it deleted from Schedule B the preprinted policy exclusions from coverage relating to unrecorded easements and for any unrecorded title issue which a correct survey and inspection of the property would reveal. [Defendant] did not request authorization from Fidelity prior to deleting these policy exclusions and Fidelity would not have agreed to underwrite the policy as issued by [Defendant]. Fidelity's claims against [Defendant], which are the only remaining claims in this case, do not depend on the outcome of the [State Court Action].

*Id.* Fidelity maintains that its "damages consist of the settlement amount [it] was required

to pay to [the Henns] and of the fees and costs [it] incurred in defending against [the Henns'] claims." *Id.* at 6. Therefore, it argues that "a stay is unwarranted under the factors enumerated in *String Cheese Incident* . . . ." *Id.* In addition, Fidelity avers that it will be prejudiced by any delay of this case. *Id.*

In its Response, Defendant argues that because there has been no admission that the Henns' underlying insurance claim was covered by the title policy, whether Fidelity's claims against Defendant have any basis in fact is dependent on the State Court Action. *Response* [#123] at 3-7. Specifically, Defendant avers that "[t]he question of whether there was an easement must be decided in the [State Court Action] according to the title policy . . . ." *Id.* at 7 (emphasis omitted). Defendant further argues that one of the claims asserted in the State Court Action is that the Henns had actual knowledge of the easement on their property and the title policy allegedly "does not provide coverage for unrecorded claims or easements 'known to the insured claimant and not disclosed in writing' to [Defendant] or Fidelity" *Id.* at 8 (quoting *Response, Ex. A* [#123-1] ¶ 3(b)). Defendant maintains that if "the Henns had actual knowledge of the neighbors['] use, there would be no coverage, no obligation of Fidelity to indemnify, and no opportunity to pass through policy damages to [Defendant]." *Id.* Defendant argues that this is just one of the factual issues that must be resolved by the state court before this instant litigation should proceed. *Id.* at 9. With regard to the *String Cheese Incident* factors, Defendant argues that it "would be greatly burdened and highly prejudiced in its ability to defend the remaining claim without a stay." *Id.* It maintains that "if the stay were lifted, [it] would be forced to litigate facts and issues that will be (and should be) litigated by the Henns and their neighbors . . . ." *Id.* at 9. Without a stay, Defendant argues that there is a risk of inconsistent judgments.

*Id.* at 9-10. With regard to Fidelity's allegation that it will be prejudiced by a stay, Defendant maintains that "the title policy indicates that damages are not due and owing under the policy until thirty (30) days after both 'liability and the extent of loss or damage' have been 'definitely fixed' in accordance with the policy, which is when there is a final determination adverse to the insured's title." *Id.* at 10 (quoting *Response, Ex. A* §§ 12(b), 9(b)).

In its Reply, Fidelity argues that Defendant's characterization of this case is incorrect. *Reply* [#124] at 2. Fidelity maintains that this "is not an indemnity case requiring a final resolution of an underlying action." *Id.* Fidelity avers that its claims are based on the Issuing Agency Agreement. *Id.* at 2, 4. According to Fidelity, the "Issuing Agency Agreement's plain language states that [Defendant] is liable for any 'Loss' resulting to Fidelity from [Defendant's] 'failure . . . to comply with the terms and conditions of'" the Issuing Agency Agreement. *Id.* at 4. Fidelity further argues that "[t]here is no language in the Issuing Agency Agreement making [Defendant's] liability for breach of the agreement contingent on title policy defenses." *Id.* at 5. Fidelity maintains that there is no risk of inconsistent verdicts because its claims against Defendant are not contingent on the State Court Action. *Id.* at 6. Finally, Fidelity argues that "[l]ifting the stay will promote judicial economy and prevent prejudice to Fidelity by avoiding unnecessary delay in the resolution of its claim." *Id.*

**C.     The Issuing Agency Agreement**

As noted above, Fidelity's claims against Defendant are based on Defendant's alleged breach of the Issuing Agency Agreement and not on a claim of indemnification for any liability under the Henns' title policy. *See generally Third-Party Complaint* [#34]. Therefore, the Court has examined the Issuing Agency Agreement.

6

The Issuing Agency Agreement states that Defendant can be held liable to Fidelity "for any Loss resulting to [Fidelity] by reason of [Defendant's] failure to comply with the terms and conditions of" the Issuing Agency Agreement. *Reply, Ex. A* [#124-1] at ¶ 6.C. The Issuing Agency Agreement defines a "Loss" as a sum "paid or to be paid by [Fidelity] . . . to settle or compromise claims under any of [Fidelity's] Title Assurances issued by [Defendant] . . . ." *Id.* at ¶ 12.A. Under the agreement, this includes expenses, costs, and attorneys' fees spent settling such claims.

**D.   The State Court Action**

In the State Court Action, Westpac Aspen Investments, LLC ("Westpac"), a real estate investment company, is suing the Henns. *See generally Response, Ex 1* [#123-2]. Specifically, Westpac asks the state court to determine that it has an easement across the Henns' property based on a variety of legal theories. *Id.* ¶¶ 101-28. Alternatively, Westpac seeks a declaratory judgment giving it permanent construction access the Henns' property. *Id.* ¶¶ 129-31. Westpac also brings other related claims against the Henns and asks the court to grant permanent injunctive relief. *Id.* ¶¶ 132-52. In support of its claims, Westpac alleges that the Henns had actual knowledge of certain easements across their property. *Id.* ¶ 34.

## II. Analysis

**A.   The Applicable Standard**

Fidelity states that the Motion is brought pursuant to Fed. R. Civ. P. 59(e). *Motion* [#114] at 3. In its Response, Defendant argues that the Motion is brought pursuant to Fed. R. Civ. P. 72. *Response* [#123] at 2. The Court notes that Fed. R. Civ. P. 59(e) governs

alterations of and amendments to *judgments*. Fed. R. Civ. P. 60(b), on the other hand, governs relief from an *order* entered by a court. Therefore, if the Motion is a motion for reconsideration of an *order* entered by the Court, Rule 60 would be the applicable rule. Based on the arguments made by Fidelity, the only subsection of Rule 60(b) that might be applicable here is Rule 60(b)(6) "any other reason that justifies relief." However, Fidelity fails to offer any argument regarding this rule. With regard to Defendant's arguments about Rule 72, that rule would only be applied if the District Judge was considering an *objection* to an order entered by the undersigned. However, based on the arguments made by the parties, what Fidelity is actually asking the Court to do is to lift the stay that is currently in place. Accordingly, the Court will analyze the Motion as a motion requesting that the stay be lifted.

**B.     Application of the Standard**

In *Agile Sky Alliance Fund LP v. Citizens Fin. Grp.*, No. 09-cv-02786-MSK-BNB, 2010 WL 1816351 (D. Colo. May 5, 2010), the Court analyzed a contested motion to lift a stay of discovery. As Judge Boland explained:

> Rule 1 instructs that the Federal Rules shall be "construed and administered to secure the just, speedy, and inexpensive determination of every action," and Rule 26(c) permits a court to make any order necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including entry of a stay of discovery.

*Id.* at *1. He then reanalyzed the facts of the case applying the *String Cheese Incident* factors to determine whether the stay should remain in effect. *Id.* at 1-2. As in that case, here, the Court will apply the *String Cheese Incident* factors based on the changed procedural posture to determine if the stay should be lifted. As discussed in the Challenged Order, the Court considers the following factors: (1) the interest of the plaintiff in proceeding

expeditiously and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the Court; (4) the interests of nonparties; and (5) the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (citing *FDIC v. Renda*, No. 85-2216-O, 1987 WL 348635, at *2 (D. Kan. Aug. 6, 1987) (unreported decision)).

### 1. Fidelity's Interests

Fidelity argues that it will be prejudiced if the stay remains in effect. *Motion* [#114] at 5; *Reply* [#124] at 6. In support of this contention, Fidelity argues that "[l[ifting the stay will promote judicial economy and prevent prejudice to Fidelity by avoiding unnecessary delay in resolution of its claim." *Reply* [#124] at 6. As Fidelity notes, its claims against Defendant are based on Defendant's alleged breach of the Issuing Agency Agreement and not on a claim of indemnification for any liability under the Henns' title policy. *See generally Third-Party Complaint* [#34]. Pursuant to Colorado law, the elements for breach of contract are: (1) the existence of a contract; (2) plaintiff's performance or justification for nonperformance; (3) defendant's failure to perform the contract; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Key in this case is that Fidelity will have to establish that the amount it paid in settlement of the Henns' claims against it *resulted from* Defendant's alleged breach of the Issuing Agency Agreement.

As noted above, in the State Court Action, among other things, Westpac asks the state court to determine that it has an easement across the Henns' property based on a variety of legal theories. *Response, Ex 1* [#123-2] ¶¶ 101-28. In support of its claims, Westpac alleges that the Henns had actual knowledge of certain easements across their

9

property.  *Id.* ¶ 34.  As a result, this issue is being litigated in the State Court Action.

Assuming, *arguendo*, that the Henns were not entitled to coverage under the title policy

because they knew of the easement prior to obtaining the insurance, as is alleged in the

State Court Action, any "Loss" suffered by Fidelity due to its settlement with the Henns may

have been gratuitous, and thus may not have *resulted from* a breach of the agreement by

Defendant.  Therefore, in order for Fidelity to litigate its breach of contract claim in this

action and establish that the alleged damages *resulted from* Defendant's alleged breach

of the Issuing Agency Agreement, the parties will have to engage in discovery about at

least some of the factual issues in dispute in the State Court Action.  Based on the

allegations in the Third-Party Complaint and the applicable law, the Court therefore

concludes that Fidelity's claims against Defendant may to some extent be contingent on

the outcome of the State Court Action.  Fidelity's initial request for a stay of this action was

sensible at the time because it was as yet unclear whether Plaintiff would suffer *any* "Loss"

under the Issuing Agency Agreement.  Despite Fidelity's settlement with the Henns, that

question remains to be answered.

Because the State Court Action must resolve whether there is an easement and may

resolve the question of whether the Henns knew of any such easement, Fidelity's claims

in this case should not proceed until after the State Court Action is resolved.  While Fidelity

may consider this an "unnecessary delay," it is a necessary delay that will conserve both

the Court's and the parties' resources to allow key factual issues to be determined in the

State Court Action.  Accordingly, the Court finds that, while Fidelity has an interest in

proceeding expeditiously, there is no prejudice to Fidelity if the stay remains in place

because the State Court Action must be resolved before Fidelity can prove an essential

element of its breach of contract claim.  Further, as the parties note, the State Court Action is scheduled for trial in March 2015.  *Status Report Pursuant to Court's Minute Order Dated September 2, 2014 [Doc No. 129]* [#130] at 2.  Therefore, at this point it appears that the delay will not be long in duration.  Accordingly, the first *String Cheese Incident* factor weighs in favor of maintaining the stay.

### 2. The Burden on Defendant

Defendant argues that it will be prejudiced if the stay is lifted because it "would be forced to litigate facts and issues that will be (and should be) litigated by the Henns and their neighbors . . . ."  *Response* [#123] at 9.  The Court agrees.  As noted above, the issues in this case overlap with the issues being litigated in the State Court Action.  If this case proceeds in parallel with the State Court Action, Defendant will have to expend resources litigating the issues raised in the State Court Action.  Expenditure of those resources would be wasteful.  Therefore, the second *String Cheese Incident* factor weighs in favor of maintaining the stay.

### 3. The Convenience to the Court

With regard to the third factor, it is certainly more convenient for the Court to keep the stay in place while the state court determines key facts as a result of trial in the State Court Action.  Accordingly, the third *String Cheese Incident* factor weighs in favor of maintaining the stay.

### 4. The Interests of Nonparties the Public Interest

With regard to the fourth factor, there are no nonparties with significant particularized interests in this case. Accordingly, the fourth *String Cheese Incident* factor neither weighs

in favor nor against a stay.

### 5. The Public Interest

With regard to the fifth and final factor, the Court finds that the public's only interest in this case is a general interest in its efficient and just resolution. Thus, the fifth *String Cheese Incident* factor weighs in favor of maintaining the stay.

Weighing the relevant factors, the Court concludes that a stay is still appropriate in this case.

### III. Conclusion

Therefore, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#114] is **DENIED**.

IT IS FURTHER **ORDERED** that Plaintiff's (Corrected) Motion to Amend Scheduling Order [#100] and Plaintiff's (Corrected) Motion to Allow Two Employee Depositions in the Depositions Allowed Pursuant to the Court's Minute Order of April 3, 2014, Extending Discovery Cutoff [#107] are **DENIED without prejudice** because the stay remains in place.

IT IS FURTHER **ORDERED** that **within seven days of resolution of the State Court Action**, the parties shall file a notice on the docket informing the Court that the State Court Action has been resolved. Such notice shall constitute good cause for lifting the stay.

Dated: October 1, 2014                    BY THE COURT:

*Kristen L. Mix*
Kristen L. Mix
United States Magistrate Judge